IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ENTERED
NOV 22 2000

| | |
|---|---|
| ANDREW COOK, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 00-G-0597-S |
| POWERTEL-BIRMINGHAM, INC., | ) |
| Defendant. | ) |

MEMORANDUM OPINION

In the instant action plaintiff has alleged that defendant Powertel-Birmingham, Inc. [hereinafter Powertel] defamed him by informing certain individuals that it had terminated him for using company property to access and distribute pornographic material from the Internet.

Plaintiff began working for Powertel in late June 1998 as a collections representative, said collections efforts performed by means of a telephone located at his work station. At his work station plaintiff's telephone and computer were connected to the telephone system via the Internet. While at work

plaintiff was required to "log-on" the computerized telephone system by use of a secret PIN code assigned to him by Powertel's operations support analyst and known only to him and Management Information Services [hereinafter MIS].[1]

When plaintiff began work at Powertel he received a copy of the employee handbook specifically prohibiting electronic communications for purposes **other than business**. On March 26, 1999, he received a revised handbook which contained company policy concerning "ELECTRONIC MAIL, INTERNET AND COMMUNICATIONS MEDIA POLICY," set forth in the following manner:

> All electronic communication systems and information transmitted by or stored in these systems are the property of Powertel, Inc. and must be used FOR BUSINESS PURPOSES ONLY. This includes, but is not limited to, the use of e-mail, SMS, **the internet,** software, computers, telephones, facsimiles, copiers and other business equipment. Any unauthorized or inappropriate use of these devices for non-business purposes is a violation of company rules, is strictly prohibited, and may result in disciplinary action up to and including dismissal.

---

[1] Plaintiff would have had to reveal the PIN number to other company employees for them to access his computer. The purpose of the PIN number is to enable each employee's supervisor to know that the employee is at his station and available to make or receive calls. When the employee leaves the station for any length of time he is required to "log-off" to reflect his unavailability to take calls.

Enumerated prohibited activities follow the statement of the policy, making certain that there is no misunderstanding. Improper use of the Internet included, among other things, "[a]ccessing, sending, receiving or storing obscene or pornographic material or other sexually explicit material." Plaintiff signed a certification that he had received and read the handbook.

On February 10, 1999, plaintiff attended a meeting conducted by Kay Patterson Hallman, Vice President of Customer Service, in which she reinforced with attendees rules included within the employee handbook, i.e., sections 9,[2] 12, and 13, and Privacy of Communications. Plaintiff signed a form acknowledging his presence at the meeting and testified at deposition that he understood he was not to use Powertel's computers, including e-mail and the Internet, for personal interests. Not only did plaintiff understand that use of Powertel's computers, including e-mail and the Internet, for personal interests was prohibited, there was no business reason for Mr. Cook to use them. Ms. Hallman testified that she specifically told plaintiff not to access the Internet.

---

[2] Rule 9 prohibits "[p]erforming personal work or having personal work done on the premises, utilizing company property for personal use or any unauthorized operation of company equipment."

3

On June 15, 1999, Richard Howard, Powertel's Director of Human Resources, sent e-mail to all Powertel employees reminding them of company communications media policy and specifically listing certain prohibited activities.

Plaintiff encountered repeated computer problems during his employment at Powertel. About August 1999 he reported the problems to his supervisor Marietta McClendon who referred him to MIS for assistance. MIS ultimately determined that plaintiff had corrupted files, downloaded from the Internet, on his computer. Some of the down-loaded files contained sexually explicit material.

During MIS's investigation Lisa Reynolds, a Powertel customer service representative, reported to Ms. McClendon that plaintiff was watching video clips on his computer of a female dancing provocatively.[3] She had seen him pull up a document on his computer depicting a woman in "real low-cut shorts on a car." She had seen him call others to his computer screen on several occasions to look at the picture. Ms. McClendon reported the information to Kay Hallman.

About August 24, 1999, Ms. McClendon and customer service supervisor Andy Thrower met with plaintiff. Ms. McClendon presented him

---

[3] Ms. Reynolds's cubicle was located directly behind that of plaintiff.

4

with a copy of the form he had signed following the February 10, 1999, meeting and a copy of the Richard Howard e-mail sent all employees and advised him that because of the information MIS had found on his computer Powertel would conduct an investigation of unauthorized activities. Plaintiff was placed on suspension pending the outcome of the investigation. She further advised him that a check by MIS indicated that all of the "hits" on the Internet on pornographic sites had been made by the plaintiff. Plaintiff denied having accessed the sites at that meeting and later in the day at a meeting with Larry Baldwin, Human Resources Manager.

    During plaintiff's suspension and MIS's investigation use of plaintiff's "log-ins" determined that he had accessed the following Internet sites: "dirtysouthraw.com;" "dirtysouthraw: com on in!;" "dirtysouthraw: behind the scenes pictures;" and "welcome to studio 16, your teen slut wonderland!!" Access dates and times matched the dates and times plaintiff accessed his computer signifying his availability to make calls. The site "sexzilla.com" was also accessed. Included within the features of "sexzilla.com" were "Hard Hanks Sex Shack," "Live Sex Dungeon," and Live Hardcore Amateur Sex." Clips from the site were downloaded and forwarded via e-mail to one of plaintiff's friends

outside Powertel's employment. One clip showed a woman gyrating her rear end. Accompanying mail read: "[W]ell I do believe that this is something to holler about 'she is shaking what her mama gave her.'"

Based on the information disclosed to her, Ms. Hallman recommended plaintiff's termination. The recommendation was passed to Richard Howard, Corporate Director of Human Resources. Mr. Howard approved the recommendation and forwarded it to Vice President of Corporate Human Resources Brad Vanacore who had the power to make the final decision. Ms. McClendon was advised to inform plaintiff of the termination decision.

Prior to termination plaintiff never informed Powertel that someone else was accessing the Internet at his station. Affidavits and declarations from Powertel employees are to the effect that plaintiff accessed the Internet and showed them pictures he had downloaded.[4] Other than plaintiff's denial and

---

[4] Lisa Reynolds saw him pull documents up on his computer. Darius King, customer service representative, saw plaintiff pull up a picture of a woman in a bikini. On another occasion he saw that plaintiff had pulled up web site "dirtyraw.com" from Lotus Notes. Obbie Franklin, customer service representative, saw plaintiff pull up a picture from Lotus Notes of a woman in a thong. Carvice King, customer service representative, saw plaintiff pull up an image of a woman in a bikini shaking her rear end. Dorothy Douglas, former employee who worked as a customer service representative saw an image on his computer of a woman scantily clad with her "bootie shaking." She saw him
(continued...)

assertion that others used his machine there is no evidence in the record to negate the findings of MIS or to refute the testimony of company employees.

None of the affiants or those making declarations testified that he heard anyone in management stating why plaintiff was fired or the bases of the termination decision. Communications circulated by Powertel relative to plaintiff's misuse of company communication media was confined to management and those who needed to know.[5] There is no contrary evidence in the record. Although plaintiff identifies employees who knew of his termination he does not know who informed them.

On the basis of the above-stated facts plaintiff filed suit under Alabama law for defamation. The case was removed to this court March 8, 2000. Defendant filed a motion for summary judgment October 2, 2000.

---

[4] (...continued)
fooling around with the computer during the evenings.

[5] Those who needed to know included the following: Ms. Hallman (Vice President of Customer Services); MIS; managerial employees Trina Jones and Jeremy Jackson investigated the contents of plaintiff's computer; Larry Baldwin (Human Resources Manager), Richard Howard (Corporate Director of Human Resources, and Brad Vanamore (Vice President of Human Resources) reviewed the investigation findings and recommended termination; Marietta McClendon (plaintiff's former supervisor) who had to terminate plaintiff for accessing, downloading, and forwarding pornography in violation of Powertel's policy.

Alabama adopted the elements of defamation as set forth in *Restatement (2d) of Torts* § 558 (1977) in *McCaig v. Talladega Pub. Co., Inc.*, 544 So. 2d 875, 877 (Ala. 1989). To establish a *prima facie* case for defamation there must be "1) a false *and* defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant ; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." Plaintiff is unable to establish the elements of this tort. Accordingly, summary judgment is due as a matter of law.

Plaintiff has failed to show that the defendant published to a third person a false and defamatory statement concerning him. Without publication there is no defamation. *Willis v. Demopolis Nursing Home*, 336 So. 2d 1117, 1120 (Ala. 1976) (referring to *McDaniel v. Crescent Motors, Inc.*, 249 Ala. 330, 333, 31 So. 2d 343 (1947). The only comments made about plaintiff's actions and his eventual termination were comments among and between Powertel managers and those who needed to know in their work capacities. Comments of the *McDaniel* court at 345, *supra,* set forth below, apply:

> The fact that the words were spoken by one of the defendant's managers in the presence of two other managers in the course of transacting defendant's business, and in the line of their duty as officers of defendant, all in respect to defendant's relations with plaintiff as an employee against whom complaints had been made in connection with his duties as an employee and in respect to that complaint does not alone make the conversation a publication so as to constitute slander.  36 Corpus Juris 1225, section 174; *Prins v. Holland-North America Mortgage Co.*, 107 Wash, 206, 81 P. 608, 5 A.L.R. 451.

The court has extended the rule to apply to communications to non-managerial employees in *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1093 (Ala. 1988) (quoting the rule set in *Burney v. Southern Ry.*, 276 Ala. 637, 642, 165 So. 2d 726, 730-31 (1964) ("As long as a communication to a non-managerial employees falls within the scope of that employee's knowledge or duties, the *McDaniel/Burney* rule applies to non-managerial employees as well as to managerial employees.")).  Plaintiff's self-publication in several instances is insufficient to meet the requirement of a defamation action. *Gore v. Health-Tex, Inc.*, 567 So. 2d 1307, 1308 (Ala. 1990) (Court held that it was "not prepared to hold that a plaintiff's own repetition of allegedly defamatory statements can supply the element of publication essential in a slander suit.")

*Gore* also set the test for a qualified privilege as set forth in *Willis v. Demopolis Nursing Home, Inc.*, 336 So. 2d at 1120 (quoting *Berry v. City of New York Ins. Co.*, 98 So. 290, 292 (Ala. 1923):

> "The test for determining whether a communicating party has a conditional or a qualified privilege is as follows:
>
>> ""Where a party makes a communication, and such communication is prompted by duty owed either to the public or a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice. ... The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken.""

Pursuant to the holding in *Reynolds v. Mays*, 547 So. 2d 518, 524 (Ala. 1989) ("Whether a statement is protected by a conditional privilege is a question of law for the court."), Ms. Hallman, as Vice President of Customer Service, owed a duty to her employer to investigate claims brought by plaintiff's co-worker and to follow through on upholding company policy. Others in the decision chain had similar duties. Their actions were made in good faith without any evidence of malice. Plaintiff knew defendant's policy prohibiting access to

the Internet and particularly sexually explicit materials. By deposition he admits that he failed to provide Powertel with any information negating his "access" to the materials or proof of access by another. He failed to demonstrate that either Ms. Hallman or Ms. McClendon harbored any ill will toward him or that their actions included any. Where no proof of malice is offered at all, summary judgment is appropriate. *Willis,* 336 So. 2d at 1120. Accordingly, the court holds that the defendant is due summary judgment on the issue of actual malice.

Too, plaintiff alleges that he was defamed by Powertel's communication to the Alabama Office of Unemployment regarding his termination. By statute, communications to the state office "shall be absolutely privileged and shall not be made the subject matter or basis for any civil action for slander or libel in any court." Ala. Code§ 25-4-116 (1999). Again, the element of malice is missing.

Whether the material plaintiff accessed is indeed pornographic is immaterial. "One cannot recover in a defamation action because of another's expression of an opinion based upon disclosed nondefamatory facts, no matter how derogatory the expression may be, since the recipient of the information is free to accept or reject the opinion, based on his or her independent evaluation of

11

the disclosed, nondefamatory facts." Restatement (Second) of Torts § 566 comment referenced in *Sanders v. Smitherman*, 2000 WL 869631, 5 (Ala.). What is material is that plaintiff knowingly accessed the Internet for ***other than business purposes*** in violation of his employer's policy prohibiting such access.[6]

      A key element in proving defamation is the truth of the matter. All statements made by Powertel regarding plaintiff's prohibited access to the Internet were true. Other than self-serving statements after the fact plaintiff was unable to produce any evidence proving their falsity. "Truth is an absolute defense to defamation." *Drill Parts and Service Co., Inc. v. Joy Manufacturing Co.*, 619 So. 2d 1280, 1289 (Ala. 1993); *Liberty Loan Corp. of Gadsden v. Mizell*, 410 So. 2d 45, 49 (Ala. 1982).

      For the reasons set forth above the court holds that plaintiff is due summary judgment as a matter of law. Defendant did not make a false or defamatory statement concerning the plaintiff. Defendant did not make an unprivileged communication concerning plaintiff's actions and termination to a third party. There is no proof defendant acted with malice. Communications by the defendant were made in good faith on a need to know basis within the

---

[6] In the opinion of the court prohibited accessed matters were certainly "sexually explicit," even if not legally classified as pornographic.

company and as a fulfillment of a duty to the public when communicated to the Alabama Office of Unemployment, said communications also protected by statute. The actions of the defendant are not actionable.

An order consistent with this opinion is being entered contemporaneously herewith.

DONE and ORDERED this 22nd day of November 2000.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.